USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/30/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDREW YEARWOOD,

                    Petitioner,

          - against -

WILLIAM BARR, in his official
capacity as the Attorney General of
the United States, ET AL.,

                    Respondents.

19-cv-4709 (JGK)

MEMORANDUM OPINION
AND ORDER

JOHN G. KOELTL, District Judge:

This case concerns alleged legal and constitutional errors that the petitioner, Andrew Yearwood, claims occurred when Immigrations and Customs Enforcement ("ICE") agents removed him from the United States to St. Vincent and the Grenadines ("St. Vincent") on May 22, 2019. The petitioner brings this petition for a writ of habeas corpus under 28 U.S.C. §§ 1331, 2241; Article I, § 9, cl. 2 of the United States Constitution; and the All Writs Act, 28 U.S.C. § 1651. The petitioner alleges violations of his Fifth Amendment procedural and substantive due process rights, his right to meaningful access to the courts, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701.

The petitioner asks the Court to order that the respondents send a team of physicians to St. Vincent to evaluate the petitioner and to return the petitioner to the United States in a manner that is approved by a team of cardiovascular

specialists, including a doctor identified by the petitioner. If returned to the United States, the petitioner asks that the Court enjoin the respondents from placing the petitioner in immigration detention or from placing any other restrictions on the petitioner's liberty that would prevent him from accessing medical care, and further enjoin the respondents from removing the petitioner during the pendency of any appeals that follow from a decision on this habeas petition. The petitioner also seeks a declaration that the respondents' actions violated the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act.[1]

## I.

The following facts are taken from the amended petition and the sworn declarations of the parties.

The petitioner is a fifty-three-year-old father who was born in St. Vincent. Am. Pet. ¶ 53. The petitioner was admitted to the United States as a B2 non-immigrant visitor on February 13, 1991, with permission to remain in the United States until August 12, 1991. Hernandez Decl. ¶¶ 3, 4. The petitioner remained in the United States beyond that date without permission. Id. ¶ 4.

---

[1] The petitioner also seeks this same relief in a request for a preliminary injunction. However, because the issues raised in his petition are legal in nature, the Court reaches the merits of the petition and the petitioner's request for a preliminary injunction is denied as moot.

On March 4, 1997, the petitioner was convicted in the New York State Supreme Court, Kings County, of Attempted Criminal Possession of a Weapon in the Third Degree in violation of N.Y. Penal Law § 110-265.02(1). Hernandez Decl. ¶ 5. On April 14, 2018, the petitioner was arrested at his home by ICE officers and placed in immigration detention at the Bergen County Jail in Hackensack, New Jersey. Am. Pet. ¶¶ 55-56. On August 30, 2018, an immigration judge issued an order of removal against the petitioner, which was affirmed by the Board of Immigration Appeals on January 17, 2019. Id. ¶ 57. On May 1, 2019, the petitioner received a notice from ICE that ICE had reviewed his custody status and that the petitioner would remain in immigration detention. Id. ¶ 58.

The petitioner suffers from chronic heart disease and related medical conditions. Id. ¶ 59. In 2008, the petitioner suffered a myocardial infarction, which required heart surgery. Id. ¶ 60. Since that incident, the petitioner has received ongoing care from a licensed cardiologist, Dr. Bandari. Id. Before his detention, Dr. Bandari diagnosed the petitioner with several serious cardiovascular conditions including coronary artery disease, hypertension, hyperlipidemia, and venous reflux in bilateral great saphenous veins and right small saphenous vein. Id. ¶ 61.

At the time that the respondents detained the petitioner, the petitioner was prescribed five heart and blood pressure medications. Id. ¶ 65. Dr. Bandari provided a letter to ICE stating that the petitioner must be evaluated by Dr. Bandardi before any adjustments were made to the petitioner's medications. Id. Over the course of the petitioner's detention, the number of medications prescribed to him increased from five to fourteen. Id. ¶ 66. However, the petitioner was not seen by a cardiologist until he had been in detention for four months. Id. ¶ 67. While in detention, the petitioner had to visit the infirmary multiple times and he was taken to the emergency room at Hackensack Medical Center twice for chest pain and palpitations. Id. ¶ 68.

Dr. Pendyal, a physician who examined the petitioner's medical records for legal purposes in July, 2018, opined that the petitioner's medical conditions require regular treatment by a team of cardiovascular specialists, a combination of prescription medications, and careful monitoring. Id. ¶¶ 63, 69. Dr. Pendyal wrote a further letter for legal purposes dated March 4, 2019, stating that, "Until the etiology of Mr. Yearwood's chest pain can be properly elucidated, I would be reluctant based on the information I have been provided to allow him to travel as a passenger in an aircraft." Id. ¶ 74; Docket No. 1-2. While Dr. Pendyal's letter was provided for legal

4

purposes, there is no allegation that it was provided to immigration authorities prior to the current proceeding.

The petitioner asserts that he anticipated seeking relief regarding the conditions of his confinement and a stay of his removal. Am. Pet. ¶ 76. In anticipation of seeking such relief, the petitioner's attorney arranged for Dr. Ross, a specialist from Montefiore Medical Center, to visit and evaluate the petitioner in consultation with Dr. Pendyal. Id.

On May 19, 2019, the petitioner's attorney contacted staff at the Bergen County Jail to arrange for Dr. Ross to visit the petitioner on May 23, 2019. Id. ¶ 77. ICE approved this request on May 20, 2019. Id. On May 21, 2019, ICE requested medical clearance for the petitioner's removal by a certified health authority at the Bergen County Jail. See Calidonio Decl. ¶ 4. That same day, a registered nurse at the jail medically cleared the petitioner for travel, including by airplane. See Dkt. No. 11-2 at 1. In a sworn declaration, Thomas Flynn -- the ICE Supervisory Detention and Deportation Officer in New York who supervises the Jail Liaison Unit and who told the petitioner that ICE had no issue with the requested medical consultation -- stated that he was not aware that the petitioner's removal was scheduled to take place the day before the agreed-upon medical consultation. Flynn Decl. ¶ 3.

At approximately 1:00 a.m. on May 22, 2019 officers woke the petitioner and told him he was being removed from the United States. Am. Pet. ¶ 78. The immigration officers denied the petitioner's repeated requests to make a phone call until around 6:15 a.m., after the petitioner had arrived at John F. Kennedy airport ("JFK"). Id. ¶¶ 79-80. The respondents state that, as a general matter, the Bergen County Jail shuts down access to all telephones in the facility overnight. Flynn Decl. ¶ 5.

At 6:15 a.m., the petitioner left his attorney a voicemail in which he stated that he was at JFK and was being removed from the United States. Am. Pet. ¶ 81. The petitioner also called his daughter and left her a voicemail in which he indicated that he believed that his flight would leave around 10:30 a.m. Id.

At 6:47 a.m., the petitioner's attorney began emailing officials at the United States Attorney's Office for the Southern District of New York. Id. ¶ 82. In the email, the petitioner's attorney indicated that the petitioner had a complex heart condition and that he should not be placed on an airplane under any circumstance. Id. The petitioner's attorney attached to the email the March 4, 2019, letter from Dr. Pendyal explaining his medical conclusions and his position that he would be reluctant to have the petitioner travel by airplane. Id.

The petitioner was required to board the airplane to St. Vincent. Id. ¶ 84. The petitioner was accompanied by two immigration officers, who remained with him on the flight. Id. The petitioner told both officers that he had a heart condition. Id. The officers responded that they had not been informed of the petitioner's medical condition. Id. The petitioner's flight left JFK at 8:07 a.m. Id. ¶ 85.

Following further emails to the United States Attorney's Office, at 9:42 a.m., the petitioner's counsel submitted a petition for a writ of habeas corpus to this Court as the Part I judge. Id. ¶ 88.

This Court held a telephone hearing at approximately 10:22 a.m. Id. ¶ 89. During the proceeding, the Assistant United States Attorneys indicated that the petitioner's flight had already left for St. Vincent. Id. Accordingly, the Court dismissed the petitioner's request to enjoin the respondents from removing the petitioner as moot. Id. The Court ordered the Government to inquire as to whether the petitioner was provided his medication before his flight, and to ensure that the petitioner received his medications expeditiously if he did not already have them. Id. ¶ 90.

The petitioner's flight landed in St. Vincent around 12:28 p.m. Id. ¶ 91. The petitioner reportedly experienced severe chess pressure during the flight. Id. ¶ 94. When the airplane

landed, the petitioner was taken immediately to a medical clinic and then transported by ambulance to a hospital. Id.

In a telephone conversation with Dr. Pendyal on May 24, 2019, the petitioner said that the pain he experienced during the flight was similar to what he experienced prior to his first heart attack in 2008. Id. The petitioner reported that the doctors at the hospital in St. Vincent said that the petitioner experienced a small heart attack. Id.

The petitioner now brings this petition for a writ of habeas corpus, seeking, among other things, to have a team of medical specialists flown to St. Vincent to evaluate him and requiring that he be brought back to the United States through medically appropriate means. The petitioner asks for an injunction against the respondents' placing the petitioner in immigration detention upon his return to the United States or from placing any other restrictions on the petitioner's liberty that would prevent him from accessing medical care, and from removing the petitioner during the pendency of any appeals that follow from a decision on this habeas petition. The petitioner also seeks a declaration that the respondents' actions violated the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act.

The respondents oppose the petition on grounds that (1) the Court lacks jurisdiction to direct the Government to return the

petitioner to the United States; (2) the petitioner's challenge
to his removal is moot; (3) the REAL ID Act, 8 U.S.C. § 1252(g),
strips the Court of subject-matter jurisdiction over the
petitioner's challenge to the execution of his removal order;
and (4) the petitioner's enumerated causes of action -- namely
his claims under the Due Process Clause and the Administrative
Procedure Act -- do not support the injunctive relief that he
requests. For the reasons explained below, the petition is
**denied.**

## II.

### A.

As a threshold matter, the petitioner has not shown that a
petition for a writ of habeas corpus is the appropriate vehicle
to litigate his claims. "The traditional function of the writ is
to secure release from illegal custody." Cody v. Henderson, 936
F.2d 715, 720 (2d Cir. 1991). However, the relief that the
petitioner seeks, which sounds in habeas, will not redress the
alleged harm that he suffered, which sounds in tort.[2]

---

[2] The petitioner has been removed from the United States pursuant to an
order of removal that he does not challenge. The Government initially
argued that the petition is improper because the petitioner is no
longer "in custody." However, jurisdiction for the purpose of habeas
corpus is measured at the time that the petition is brought. Reyes-
Sanchez v. Ashcroft, 261 F. Supp. 2d 276, 282-83 (S.D.N.Y. 2003). It
is undisputed that the petitioner was in the custody of two ICE
officers at the time the petition was filed. See Umanzor v. Lambert,
782 F.2d 1299, 1302 (5th Cir. 1986) (explaining that an alien who was
inside an aircraft against his will was in custody). At the argument
on the petition, the Government no longer pressed its argument that

The petitioner alleges that his procedural and substantive due process rights were violated because he was not provided sufficient notice of his removal or the opportunity to call his lawyer until he arrived at JFK.[3] He has not shown that returning to the United States would redress any injuries that flow from these alleged due process violations. The petitioner also alleges that the respondents failed to provide the petitioner with adequate medical care -- specifically, adequate discharge planning -- in violation of his constitutional rights. However, the petitioner has failed to show how the injunctive relief that he seeks could remedy this past alleged harm, and the petitioner has not cited any cases that present similar circumstances to support such relief. Similarly, the petitioner has not shown that ICE's alleged failure to follow the procedures set forth in its Performance Based National Detention Standards would be redressed by an order returning the petitioner to the United States. The same is true of the petitioner's claims under the APA. Although the petitioner does not specifically identify the agency action that he challenges under the APA, he has not shown

the petition is improper because the petitioner had already been removed.

[3] The petitioner has not cited any authority for the proposition that he had a right to know the precise date that he was going to be removed or that he had a right to contact his lawyer before his arrival at JFK. The petitioner had been subject to and order of removal that was affirmed on January 17, 2019.

that any action could be redressed by the equitable relief that he seeks.

Indeed, at oral argument, counsel for the petitioner acknowledged that even if the petitioner were brought back to the United States, ICE could validly remove him again, and he would find himself in the same position as he finds himself now.[4] When asked about redressability, the petitioner's attorney hypothesized that the petitioner's injuries would be redressed if the petitioner were returned to the United States but then re-removed in a way that is procedurally sound and with a medical discharge plan. However, there is no way that such a process could cure the alleged harm that has already occurred from the first removal, and indeed, such a process would be burdensome for the petitioner, who would be forced to travel back to the United States only to be removed to St. Vincent again. Moreover, it is not clear how the petitioner would undergo this travel, because one of the bases for his claims is that he is not medically fit to fly. The mismatch between the relief that the petitioner seeks and the harm he alleges makes a petition for a writ of habeas corpus an improper vehicle for his claims. Cf. Preiser v. Rodriguez, 411 U.S. 475, 494 (1973) (explaining that "the traditional purpose of habeas corpus" is

_____

[4] And for that reason, to the extent that the petitioner's injury is based on the quality of medical care in St. Vincent, the petitioner has not shown that the relief he seeks could redress that injury.

to seek "immediate or more speedy release" from custody and that "habeas corpus is not an appropriate or available federal remedy" for damages claims).

To support his argument that returning the petitioner to the United States is an appropriate remedy, the petitioner relies on a bevy of cases in which courts either ordered the return of a petitioner where the removal was in violation of a court order or stayed a pending removal based on a procedural error. However, the cases on which the plaintiff relies are plainly distinguishable. In each of these cases, there was a colorable claim that the petitioner would not have been removed but for the procedural error. For example, in Calderon v. Sessions, the district court stayed a petitioner's removal in order to afford the petitioner the opportunity to exhaust his right to pursue a provisional unlawful presence waiver. 330 F. Supp. 3d 944, 956 (S.D.N.Y. 2018). Whether the Calderon petitioner was allowed to engage in the process of pursuing a provisional unlawful presence waiver was directly related to whether the petitioner would ultimately be removed. Id. The procedural errors alleged in this petition, however, are not the type that call into question whether the petitioner would have been removed. Indeed, the petitioner concedes that if he were to return to the United States, the respondents could lawfully remove him again. Although the procedural errors alleged in this

petition call into question the manner of the petitioner's removal, they do not bear on whether the petitioner ultimately would have been removed.

Similarly, where a petitioner is removed in violation of a court order staying that removal, courts have required that the petitioner be returned to the United States so that the court orders would be enforced. See, e.g., Blake v. McAleenan, No. 19cv10529 (D.N.J. May 30, 2019).[5] But this is not such a case.

In addition to the fact that an order to return the petitioner to the United States would not redress his claims, as pleaded, the petition is not justiciable. It is well settled that "[i]n order to satisfy the case-or-controversy requirement [of Article III], a party must, at all stages of the litigation, have an actual injury which is likely to be redressed by a favorable judicial decision." United States v. Williams, 475 F.3d 468, 478-79 (2d Cir. 2007) (citation omitted and emphasis added).[6] It is possible that the petitioner's claims could be

---

[5] Docketed in this case as Docket No. 13-6.

[6] Similarly, the petitioner has not shown how a declaration that the respondents violated the Due Process Clause and the APA would redress his injuries. The remedies available through the Declaratory Judgment Act "are intended to afford one threatened with liability an early adjudication before damage accrues from impending litigation, thereby permitting parties to settle matters and controversies before they develop into further violations of law or contractual duties." Larami Corp. v. Amron, No. 92cv7323, 1994 WL 369251, at *3 (S.D.N.Y. July 13, 1994) (citing 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2751). The respondents' actions, however, are not ongoing, and a declaration will not redress any past harm, and the petitioner has not shown that there is any potential of future harm

redressed by damages. However, the petitioner has not sought such relief, and the petitioner's complaints about the procedural defects in removing him would not be redressed by bringing him back to the United States subject to being removed again.

**B.**

Moreover, the REAL ID Act, 8 U.S.C. § 1252(g), strips the Court of subject-matter jurisdiction over the petitioner's claims because his claims are a challenge to his removal order. See Saavedra De Barreto v. I.N.S., 427 F. Supp. 2d 51, 60 (D. Conn. 2006) (explaining that "the REAL ID Act contains clear and unambiguous statutory directives divesting the district courts of their habeas corpus jurisdiction to review final orders of removal").

8 U.S.C. § 1252(g) provides, in relevant part, that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." The petitioner argues that he is not challenging his final order of removal but, rather, the process that the respondents

---

based on these past alleged violations of the Due Process Clause and the APA that could be solved by a declaratory judgment.

employed to remove him from the United States and that, accordingly, the jurisdictional bar of § 1252(g) does not apply.

The Second Circuit Court of Appeals explained that "whether the district court has jurisdiction will turn on the substance of the relief that a [petitioner] is seeking." Delgado v. Quarantillo, 643 F.3d 52, 55 (2d Cir. 2011). Although the petitioner claims to challenge only the manner and method of his removal,[7] and not the order of removal itself, the relief he requests shows otherwise. The ultimate relief that the petitioner seeks -- an order returning him to the United States and preventing the respondents from detaining him or removing him during the pendency of any appeals -- is a direct challenge to the order of removal, regardless of the fact that the petitioner frames his claim as a challenge to the process through which he was removed. See Delgado, 643 F.3d at 55; J.E.F.M. v. Lynch, 837 F.3d 1026, 1032 (9th Cir. 2016) (the REAL ID Act bars review of any "claim by an alien, however it is framed, [that] challenges the procedure and substance of an agency determination that is 'inextricably linked' to the order of removal" (citation omitted)). The equitable relief that the petitioner seeks is barred by the statute because, if granted,

---

[7] Specifically, the petitioner claims that the manner in which he was removed violated the respondents' own regulations, the standards set forth in the respondents' Performance Based National Detention Standards, and the petitioner's Due Process rights.

that relief would undo his removal order. And by its plain terms, 8 U.S.C. § 1252(g) strips district courts of jurisdiction over claims attacking the Government's decisions or actions to execute removal orders. See Vasquez v. Aviles, No. 15cv2341, 2015 WL 1914728, at *2 (D.N.J. Apr. 24, 2015), aff'd, 639 F. App'x 898 (3d Cir. 2016).

Nor can the petitioner's claims avoid the REAL ID Act's jurisdictional bar on the basis that they are also based on violations of the Administrative Procedure Act. See Delgado v. Quarantillo, 643 F.3d 52, 55 (2d Cir. 2011) ("[W]e reject [the petitioner's] arguments that federal question jurisdiction exists here either because her claim arises under the APA or because she is bringing a mandamus action. The APA explicitly does not apply 'to the extent that . . . statutes preclude judicial review,' as the REAL ID Act does in this instance." (quoting 5 U.S.C. § 701(a)(1)). The petitioner's claims that the respondents violated their own regulations and procedural manual, thereby violating the APA, are barred by § 1252(g) for the reasons discussed above -- the nature of the relief that the petitioner seeks shows that the petitioner is challenging his order of removal. See id.; Andreenko v. Holder, No. 11cv6610, 2012 WL 4210286, at *4 (W.D.N.Y. Sept. 18, 2012) ("Even where a removal order is being challenged indirectly, the provisions of

the REAL ID Act still apply to bar a claim for cancellation of removal.").

As the petitioner concedes, ICE authorities removed him pursuant to a valid, final order of removal. The petitioner was placed in removal proceedings before an immigration judge and was represented by counsel in those proceedings. The petitioner did not file any applications for relief from removal, was ordered removed, received appellate consideration of the immigration judge's adverse decision, and did not seek further review by filing a petition for review with the Second Circuit Court of Appeals, as was his right. Hernandez Decl. ¶ 7. Having been removed pursuant to a valid removal order, the petitioner is now subject to a ten-year bar on returning to the United States, absent a waiver by the Secretary of Homeland Security. 8 U.S.C. § 1229c(d). Despite these circumstances and the petitioner's admission that his final order of removal was valid, the petitioner seeks an order requiring his return to the United States. The petitioner's request for such relief is a challenge to his final order of removal and is barred by the REAL ID Act. See 8 U.S.C. § 1252(g).

### B.

The petitioner argues that a construction of § 1252(g) that strips the Court of jurisdiction to review the petitioner's petition for a writ of habeas corpus violates the Suspension

Clause, U.S. Const. art. I, § 9, cl. 2, because such a
construction would leave the petitioner without an "adequate
substitute" for the writ. See I.N.S. v. St. Cyr, 533 U.S. 289,
305 (2001).

The Suspension Clause provides that "[t]he Privilege of the
Writ of Habeas Corpus shall not be suspended, unless when in
Cases of Rebellion or Invasion of the public Safety may require
it." U.S. Const. art. I, § 9, cl. 2. However, the Suspension
Clause does not apply to the petitioner's claims because, as
explained above, the petitioner has not shown that a petition
for a writ of habeas corpus is a proper vehicle to litigate his
claims.

The petitioner relies on Ragbir v. Homan to support his
argument that the Suspension Clause saves this Court's
jurisdiction over his claims. 923 F.3d 53 (2d Cir. 2019).
However, in Ragbir v. Homan the petitioner brought a
"cognizable" habeas claim. Id. at 73. The Court of Appeals
explained that habeas relief would "alter Ragbir's situation."
Id. at 74. In this case, the petitioner has failed to show that
habeas relief would provide redress.

Moreover, Ragbir is plainly distinguishable. Ragbir sought
to enjoin the execution of a valid final order of removal on
First Amendment grounds. The Ragbir petitioner alleged plausibly
that ICE officers targeted him for removal in retaliation for

his political speech activities. Id. at 59-60. The Second Circuit Court of Appeals found that it would violate the Suspension Clause for § 1252(g) to bar review of the petitioner's challenge to his removal order because the respondents' alleged conduct -- removal in retaliation for political speech -- was sufficiently "outrageous" under the Supreme Court's decision in Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 472 (1999), to overcome the REAL ID Act's jurisdictional bar. 923 F.3d at 70-72.

The circumstances of this case do not meet the threshold of outrageousness or egregiousness described in Ragbir. At the time that the petitioner was removed from the United States, the immigration authorities had received medical authorization for the petitioner to fly, and neither the petitioner nor his attorneys had provided the respondents with Dr. Pendyal's letter, which, in any event, did not state that the petitioner was not medically cleared to fly, but that Dr. Pendyal would be "reluctant" to place the petitioner on an airplane. Am. Pet. Ex. 2. At the time that the petitioner was removed, the respondents had a final order of removal -- one that the petitioner does not dispute was valid and lawful -- and medical clearance for the petitioner to fly. Unlike the situation in Ragbir, there is no allegation that the petitioner was targeted by the immigration authorities for an unlawful reason. Accordingly, the alleged

conduct in this case does not rise to the level of
"outrageousness" in Ragbir, a case in which the respondents were
alleged to have intentionally retaliated against the petitioner
by attempting to remove him from the United States specifically
because the petitioner exercised his constitutional right to
engage in political speech.

C.

The petitioner also seeks a preliminary injunction, seeking
essentially the same relief as he does on the merits of his
habeas petition. A party seeking a preliminary injunction must
show: "(1) a likelihood of irreparable harm in the absence of
the injunction; and (2) either a likelihood of success on the
merits or sufficiently serious questions going to the merits to
make them a fair ground for litigation, with a balance of
hardships tipping decidedly in the movant's favor." Doninger v.
Niehoff, 527 F.3d 41, 47 (2d Cir. 2008).

As explained above, the petitioner's claims lack merit, and
therefore the petitioner is not entitled to a preliminary
injunction.

The petitioner also seeks discovery. However, the
petitioner is not entitled to relief and therefore there is no
basis for discovery.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained above, the petition for a writ of habeas corpus is **denied.** The Clerk is directed to enter judgment dismissing this case. The Clerk is also directed to close all pending motions and to close this case.

**SO ORDERED.**

**Dated:**     **New York, New York**
              **July 30, 2019**

                                        John G. Koeltl
                              United States District Judge